UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| CONTINENTAL INTERMODAL GROUP – TRUCKING LLC<br><br>   Plaintiff,<br><br>v.<br><br>SAND REVOLUTION LLC,<br>SAND REVOLUTION II, LLC<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 7:18-cv-00147-DC<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
THE COMPLAINT FOR FAILURE TO STATE A CLAIM**

## I. INTRODUCTION

Sand Revolution's motion fails to mention directly applicable authority from the United States Court of Appeals for the Federal Circuit—the circuit court hearing all appeals in patent infringement cases—holding that patentees in cases such as this one sufficiently plead an infringement claim when they identify an accused product and allege that such product meets "each and every element of at least one claim" of the relevant patent(s). CIG in its Complaint here does *exactly* that, including by using nearly identical language and attaching the relevant patent and pictures of Sand Revolution's accused product to its Complaint. In fact, CIG's Complaint goes further, by expressly singling out the specific components of Sand Revolution's accused product and alleging that such components track the elements of exemplary claims of the '740 Patent. Thus, there can be no doubt that CIG has properly and sufficiently pleaded its infringement claims.

Sand Revolution's argument is not only contrary to Federal Circuit authority, but also amounts to a purely semantic argument raised apparently for the purpose of quibbling about the merits of CIG's claims, rather than contesting the sufficiency of CIG's pleading. Indeed, it is clear from Sand Revolution's motion that Sand Revolution comprehends precisely which system CIG accuses of infringement, it simply disagrees that infringement exists. But Sand

1

Revolution's view of the merits—with which CIG disagrees, of course—has no place in a motion to dismiss.

For all of these reasons, the Court should deny Sand Revolution's motion in its entirety.

## II. ARGUMENT

### A. The Federal Circuit has already rejected Sand Revolution's theory.

Sand Revolution in its motion relies only on general statements of authority from *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1952 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007). It notably fails to mention that the Federal Circuit has applied *Iqbal* and *Twombly* in the context of patent infringement complaints. Sand Revolution's omission in this regard is perhaps not surprising, given that the Federal Circuit's application of *Iqbal* and *Twombly* to patent cases directly contradicts Sand Revolution's argument.

In *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1258 (Fed. Cir. 2018), Disc Disease filed a complaint for patent infringement alleging that VGH Solutions' products infringed two patents (the '113 and '509 Patents) directed to a spinal brace consisting of an air injectable band with a rigid panel. The complaint identified VGH Solutions' products and alleged that the products meet "each and every element of at least one claim of the '113 [or '509] Patent, either literally or equivalently." *Id.* Disc Disease also attached to the complaint the patents and photographs of the accused products. *Id.* VGH Solutions moved to dismiss the complaint for failure to state a claim, and the district court granted the motion. *Id.* at 1258-59.

On appeal, the Federal Circuit reversed. In support of its ruling, the Court first noted that, under *Iqbal* and *Twombly*, "[s]pecific facts are not necessary" in a complaint, and that "the statement need only give the defendant fair notice of what the . . . claim is and the ground upon which it rests." 888 F.3d at 1260 (internal quotations omitted). It then specifically rejected VGH Solutions' argument that dismissal was appropriate because the complaint "merely allege[d] that certain of Defendants' products 'meet each and every element of at least one claim' of Plaintiff's patents." *Id.* The Court emphasized that the patents involved straightforward technology and few independent claims, and "[t]he complaint specifically

2

identified the three accused products—by name and by attaching photos of the product packaging as exhibits—and alleged that the accused products meet 'each and every element of at least one claim of the '113 [or '509] Patent, either literally or equivalently.'" *Id.* According to the Court, "[t]hese disclosures and allegations are enough to provide VGH Solutions fair notice of infringement of the asserted patents" and are therefore "sufficient under the plausibility standard of *Iqbal*/*Twombly*." *Id.*

Other courts have applied the *Disc Disease* Court's reasoning to the same effect. In *EZ STAK, LLC v. Dejana Truck & Util. Equip. Co.*, LLC, No. 17 C 8742, 2018 U.S. Dist. LEXIS 98537, at *5 (N.D. Ill. June 12, 2018), for example, the defendant argued that the complaint was insufficient because it "did not compare" the claims of the asserted patents to the accused infringing products. The court rejected this argument for multiple reasons. First, citing *Disc Disease*, the court explained that "the opposing party need only be given fair notice of what the [infringement] claim is and the ground upon which it rests." *Id.* at *6. As such, "a party alleging patent infringement need not 'prove its case at the pleading stage.'" *Id.* (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)). Second, the court reasoned that "[b]ecause [plaintiff] has not yet had the benefit of discovery, it cannot be expected to have fully developed its evidence of [defendant's] actual infringing products." *Id.* at *8. Indeed, such a standard would be particularly unfair where, as in the case before it, the defendant "sells many customized products rather than off-the-shelf units easily available for inspection." *Id.*

In *Align Tech., Inc. v. 3Shape A/S*, No. 17-1646-LPS-CJB, 2018 U.S. Dist. LEXIS 152717, at *12 (D. Del. Sep. 7, 2018), the complaint recited the language of a representative claim, alleged that the accused products practice that claim, and provided examples demonstrating the alleged use of some aspect of the accused products performing at least some of the requirements of the representative claim. The plaintiff, however, argued that the allegations in the complaint were insufficient because they failed to "tie" the accused products "to the elements of the asserted patent claims." *Id.* The court rejected this argument, reasoning that to require a plaintiff in its complaint to tie each and every element of a patent claim to an

3

accused product "would require the equivalent of infringement contentions, which is more than the law demands." *Id.* at *16.

Sand Revolution's argument here is directly contrary to these authorities. Indeed, Sand Revolution's argument is that because "the Complaint asserts infringement of a patent claim that specifically recites a 'mobile storage module' that includes a (1) frame, (2) container portion, and (3) integrated actuating system, CIG must, at the very least, allege that Sand Revolution makes, uses, sells, offers for sale, or imports a 'mobile storage module' that comprises these those three elements." (Dkt. No. 18, p. 7.) This insistence that CIG specifically allege, by name, the presence of a particular claim element in an accused product is the exact sort of requirement that the *Disc Disease* and other courts have expressly rejected. Far from requiring allegations that methodically and exhaustively "tie" or "compare" every patent claim element to a feature of an accused product—a requirement that amounts to nothing less than formal infringement contentions—the Federal Circuit requires only that a plaintiff allege that accused products "meet each and every element of at least one claim" of plaintiff's patents. And CIG has done precisely this, and more, as explained in detail below.

**B.    CIG's Complaint *exceeds* the standard set forth by the Federal Circuit.**

CIG's Complaint contains virtually the exact same language and supporting disclosures that the Federal Circuit found sufficient to state a claim in *Disc Disease*. Specifically, as Sand Revolution concedes, CIG in its Complaint: (1) identified and quoted an exemplary claim—claim 13—from the '740 Patent (Dkt. No. 1, ¶ 12); (2) identified Sand Revolution's infringing system, attached pictures of all of the components of Sand Revolution's infringing system, and provided links where videos showing the operation of the system can be viewed (Dkt. No. 1, ¶¶ 14 -16; *id.* Ex. D); and (3) expressly alleged that Sand Revolution's system "practices every element of one or more claims of the '740 Patent, including without limitation claim 13" (Dkt. No. 1, ¶ 15).

Moreover, like the patents at issue in Disc Disease, the '740 Patent contains few independent claims (three), and involves straightforward (even if pioneering) technology.

Indeed, Sand Revolution itself refers to its system as a "simple" one. (Dkt. No. 18, p. 8.) For all of these reasons, there is simply no distinction between CIG's Complaint and the complaint in *Disc Disease* that the Federal Circuit found sufficient under *Iqbal*/*Twombly*. As a result, Sand Revolution effectively asks this Court to refuse to follow analogous, directly applicable Federal Circuit authority. For this reason alone, Sand Revolution's motion must fail.

Notably, however, CIG's Complaint actually goes beyond the complaint in *Disc Disease*, by specifically singling out the basic components of Sand Revolution's system that track the elements of exemplary claims of the '740 Patent. At a basic level, exemplary claim 13 of the '740 patent includes six elements. The preamble of the claim makes reference to three cooperating components: a "mobile storage module" or "mobile storage unit"; a "delivery module"; and a "continuous belt loading system." (Dkt. No. 1, ¶ 12.) The lettered limitations of claim 13 then recite that the "mobile storage unit" includes three additional components: a "frame"; a "container portion"; and an "integrated actuating system." (Dkt. No. 1, ¶ 12.) CIG's Complaint specifically alleges that Sand Revolution's system includes all of these elements. In paragraph 14, CIG alleges that Sand Revolution's system includes "a <u>mobile unit for on-site proppant storage</u>, a <u>delivery unit for delivering proppant</u> from a mobile storage unit to a specified location, and <u>a belt loader for transferring proppant</u> from incoming delivery vehicles to one or more mobile storage units." (Dkt. No. 1, ¶ 14 (emphases added).) In paragraph 15, CIG alleges that Sand Revolution's system "further comprises a <u>frame</u>, a <u>container portion</u>, and <u>an integrated actuating system</u> to pivot the container portion between lowered and raised positions, as recited in the various claims of the '740 Patent." (Dkt. No. 1, ¶ 15 (emphases added).) Put simply, and although not required, CIG *does* tie and compare the individual elements of exemplary claims of the '740 Patent to the features of Sand Revolution's accused system. Short of detailed and formal infringement contentions, it is difficult to imagine what more CIG could have pleaded to put Sand Revolution on notice of its infringement.

This additional detail in CIG's Complaint is particularly significant because, like the product at issue in the *EZ STAK* case discussed above, Sand Revolution's accused product is not

5

an "off-the-shelf" product that is "easily available for inspection." 2018 U.S. Dist. LEXIS 98537, at *8. Rather, relatively few systems are in operation, and those that are in operation are located at remote, undisclosed well sites. Thus, because CIG "has not yet had the benefit of discovery, it cannot be expected to have fully developed its evidence of [defendant's] actual infringing products." *Id.* at *8. Any standard that requires as much would be unfair. *Id.*

In light of all of this, the Court should deny Sand Revolution's motion.

### C.   Sand Revolution's argument is improper, in any event.

Also notably absent from Sand Revolution's motion is any allegation or argument that it is *unaware* of the system that CIG accuses of infringement. On the contrary, Sand Revolution's motion makes it clear that it knows exactly which system CIG accuses of infringement. Sand Revolution simply wishes to argue the merits, and further must resort to semantic quibbling in order to do so. In every way, this is improper in a motion to dismiss.

Specifically, as noted above, Sand Revolution asserts that CIG should have alleged that Sand Revolution uses a "mobile storage module" that includes the various elements of claim 13 (e.g., a frame, container portion, and integrated actuating system), rather than refer to the accused product as a "proppant handling system" that includes such elements.[1]  (Dkt. No. 18, p. 7.)  Even as a purely semantic argument, this falls short. First of all, exemplary claim 13 refers to a "mobile storage module" and a "mobile storage unit" interchangeably. (Dkt. No. 1, ¶ 12.)  And, as explained above, CIG *does* expressly allege the presence of a "mobile unit for on-site proppant storage," as well as all of the other specific primary elements of exemplary claim 13. (Dkt. No. 1, ¶¶ 14-15.)  Moreover, it is abundantly clear from CIG's Complaint that CIG uses the phrase "proppant handling system" to broadly refer to the system that includes all of the necessary components recited in the '740 Patent's claims, without the intention (or need at this stage) to slavishly tie that phrase to specific claim language. Regardless, other claims of the

---

[1] It is unclear whether Sand Revolution's arguments are directed to both Counts in CIG's Complaint. Sand Revolution makes no argument specifically addressing CIG's Count II, asserting indirect infringement of the '740 Patent.

patent, like claim 1, begin by reciting a "system" that includes various elements.  (*See* Dkt. No. 1, Ex. A.)  And, as also just discussed, Sand Revolution in its motion and in its publicly-facing marketing materials refers to the accused product as its "system."  (*See* Dkt. No. 1, Ex. D; Dkt. No. 18, p. 8.)  So Sand Revolution simply cannot complain that it is somehow insufficient or ambiguous for CIG to assert that Sand Revolution's "system" includes all of the elements of one or more claims of the '740 Patent.

Beyond that, Sand Revolution's argument is actually a thinly-veiled attempt to have the Court weigh-in on the meaning of the patent's claim language and how that language relates to Sand Revolution's accused product—i.e., issues of issues of claim construction and infringement.  In fact, Sand Revolution makes its attempt to address the merits crystal clear when it alleges that the '740 Patent carves out a tight scope and that "Sand Revolution's system clearly lies outside of that scope."[2]  (Dkt. No. 18, p. 8.)  These merits-based arguments are improper at this stage.

Indeed, because an infringement analysis requires a determination of the meaning and scope of the asserted patent claims and a comparison the construed claims to the accused product, courts have found that "[c]laim construction and infringement analysis should not be resolved on a motion to dismiss." *Fujitsu Ltd. v. Belkin, Int'l, Inc.*, 782 F. Supp. 2d 868, 890 (N.D. Cal. 2011); *see also Actus, LLC v. Bank of Am. Corp.*, No. 09-cv-201, 2010 U.S. Dist. LEXIS 11398, at *2 (E.D. Tex. Feb. 10, 2010).  Such an analysis is premature at the pleading stage because it does not benefit from the procedures that typically precede a claim construction hearing, including an exchange of discovery documents relating to infringement, the exchange of

---

[2] Sand Revolution effectively makes the same claim elsewhere, as well, stating that "Sand Revolution uses simple storage silos without any actuation features, providing a cheaper and better product than CIG."  (Dkt. No. 18, p. 8.)  It also goes so far as to attach the prosecution history of the '740 Patent, and argue about why and how the patent issued.  (Dkt. No. 18, pp. 3-4; *id.* Ex. B.)  Of course, none of this undermines CIG's Complaint, because "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 2200 (2007) (quoting Twombly, 550 U.S. at 555, 127 S. Ct. at 1964).

proposed constructions, claim construction briefing, and consideration of extrinsic evidence not before the court at the pleading stage. *See Fujitsu*, 782 F. Supp. 2d at 890.

Although Sand Revolution's merits-based arguments are improper, they again conspicuously confirm that CIG's Complaint adequately identifies Sand Revolution's infringing system—if it were otherwise, Sand Revolution would not argue that its "system" does not infringe, but would instead complain that it has no knowledge of which "system" CIG has accused of infringement. And, in fact, there can be no question about the system that CIG accuses of infringement. As CIG explained in its Complaint, Sand Revolution "advertises this proppant handling system through summary descriptions, pictures, and videos posted on its website (www.sandrevolution.com) and through third party sites such as Facebook and YouTube." (Dkt. No. 1, ¶ 16.) And the video on the front page of Sand Revolution's website is titled "Sand Revolution System Overview." (Dkt. No. 1, Ex. D.) The various components of this system are depicted elsewhere in Sand Revolution's website, and CIG included those images as attachments to its Complaint, as well. (Dkt. No. 1, Ex. D.) No other "system" appears anywhere.

Given that Sand Revolution is plainly—and admittedly—on notice of the infringement claims against it, the issues of how the particular language of any given claim should be interpreted or how the accused product relates to such language are matters that must be left for another day. Sand Revolution will have the opportunity to examine CIG's position in detail after CIG serves its infringement contentions. What is clear now is that CIG has more than adequately asserted that Sand Revolution's specifically-identified accused product practices every element of one or more claims of the '740 Patent.

### III. CONCLUSION

CIG's Complaint not only meets, but exceeds, the Federal Circuit's standard for pleading patent infringement. Sand Revolution may disagree with CIG's allegations, but it will have the opportunity to dispute infringement in due course. As a result, CIG respectfully requests that the

Court deny Sand Revolution's motion in its entirety and grant such further relief as it deems just and proper.

To the extent that the Court believes that CIG's allegations fail to adequately notify Sand Revolution of its infringement claims, however, CIG respectfully requests leave to amend its Complaint under Rule 15(a)(2) to allege in more detail how Sand Revolution's accused product infringes the claims of the '740 Patent. Justice requires such an amendment because the amendment is easily made by CIG and would not represent an alteration of CIG's belief and allegations in its current Complaint that Sand Revolution's accused product practices every element of one or more claims of the '740 Patent.

Dated: October 1, 2018          Respectfully submitted

             LATHROP GAGE LLP

             By: */s/ Travis W. McCallon*
                Travis W. McCallon*
                Luke M. Meriwether*
                Eric D. Sidler*
                2345 Grand Boulevard, Suite 2200
                Kansas City, MO 64108
                Tel:  816.292.2000
                Fax:  816.292.2001
                tmccallon@lathropgage.com
                lmeriwether@lathropage.com
                esidler@lathropgage.com
                (*admitted *pro hac vice*)

                Andrew Harper Estes (TX Bar #00000083)
                Lisa K. Hooper (TX Bar #24047282)
                LYNCH, CHAPPELL & ALSUP
                300 N. Marienfeld
                Suite 700
                Midland, TX 79701
                Tel:  432.683.3351
                Fax:  432.683.2587
                hestes@lcalawfirm.com
                lhooper@lcalawfirm.com

             *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

   The undersigned hereby certifies that a true and correct copy of the above and foregoing was filed with the Clerk of Court using the CM/ECF system with service upon all counsel of record via the Courts notice of electronic filing.

             */s/ Travis W. McCallon*

30144809v1